# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **CHASITY SHANTELL VINSON**, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>**FLEETCOR TECHNOLOGIES, INC.**, a Delaware Corporation,<br><br>AND<br><br>**FLEETCOR TECHNOLOGIES OPERATING COMPANY, LLC**, a Georgia Limited Liability Company<br><br>Defendants. | CASE NO. 1:14-CV-1939-ELR-LTW<br><br>JUDGE ELEANOR L. ROSS<br><br>MAGISTRATE JUDGE LINDA T. WALKER<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Now comes the plaintiff, Chasity Shantell Vinson ("Vinson") on behalf of herself and all other similarly situated individuals and for her Second Amended Class Action Complaint alleges the following claims:

### NATURE OF THE ACTION

1. This class action seeks remedies under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") on behalf of consumers who were the subject of consumer reports procured by Defendants, FleetCor Technologies, Inc. and

FleetCor Technologies Operating Company, LLC (collectively referred to as "FleetCor") as a precondition of employment with FleetCor during the period prescribed by 15 U.S.C. § 1681p ("the Class Period") preceding the filing of the initial Complaint.

## PARTIES

2. Vinson is and has been a resident of Gwinnett County, Georgia, and is a consumer as defined by 15 U.S.C. § 1681a.

3. FleetCor Technologies, Inc. is a publicly traded for-profit corporation incorporated in Delaware with an office located in Gwinnett County, Georgia that claims to be "a leading independent global provider of specialized payment products and services including fleet cards, food cards, corporate lodging discount cards and other specialized payment services for businesses throughout the world." See http://www.fleetcor.com/our_company.htm (last visited December 8, 2015).

4. FleetCor Technologies Operating Company, LLC is a limited liability company organized in Georgia with its principal office located in Covington, Louisiana and is subsidiary of FleetCor Technologies, Inc.

5. FleetCor announces on its website that it currently has 5,100 employees, operates in 43 Countries, and has yearly revenue of 895.2 million dollars during fiscal year 2013.

6. Further, FleetCor is a "person" using "consumer reports" to make

"employment decisions" and take "adverse action" against "consumers", as those terms are defined by 15 U.S.C. § 1681a.

7. Fleetcor Technologies, Inc., may be served on its registered agent in Delaware, to wit: Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808 .

8. Fleetcor Technologies Operating Company, LLC, may be served on its registered agent in Georgia, to wit: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

10. Venue is proper in the Northern District of Georgia because FleetCor is subject to personal jurisdiction in this District, maintains a place of business in this District, and makes employment decisions regarding individuals residing in this District. 28 U.S.C. § 1391(c).

## FACTUAL ALLEGATIONS

11. Like thousands of employers across the United States, FleetCor uses consumer reports to evaluate individuals' eligibility for employment.

12. Because of the sensitive personal data contained in consumer reports, employers are mandated by the FCRA to adhere to conditions, procedures, and

limitations on the procurement and use of consumer data.

13. For example, in order to procure a consumer report for employment purposes, FleetCor must first certify to the reporting agency that it has provided mandatory pre-procurement disclosures to the consumer, and will provide additional notices if the report is used to deny employment. *See* 15 U.S.C. § 1681b(b)(1).

14. Only after receiving mandatory pre-procurement disclosures can a consumer then provide lawful written consent to procure a consumer report. *See* 15 U.S.C. § 1681b(b)(2).

15. Indeed, a consumer must be provided with a clear and conspicuous written disclosure in a document that consists solely of that disclosure that a consumer report may be procured for employment purposes. *See* 15 U.S.C. § 1681b(b)(2)(i).

16. A disclosure under 15 U.S.C. § 1681b(b)(2)(i) should be a simple disclosure stating exactly what the FCRA mandates. Only a section for the consumer's written authorization may accompany the disclosure.

17. An FCRA disclosure should not be stretched into multiple pages of miscellaneous state disclosures, waivers of liability or other extraneous information which distract from the purpose of notifying applicants that their sensitive consumer data would be procured.

18. The FCRA also places conditions, procedures and requirements on

employers who use the consumer report to take adverse action against the consumer. Specifically, 15 U.S.C. § 1681b(b)(3)(A) requires that the employer provide the consumer a copy of the consumer report together with a written description of consumer rights authored by the Consumer Financial Protection Bureau *before* delaying or denying employment based in whole or in part on the consumer report.

19. FleetCor altogether fails to comply with these fundamental FCRA obligations as illustrated by Vinson's experience.

## **VINSON'S EMPLOYMENT EXPERIENCE**

20. Vinson applied for employment with FleetCor and was subsequently hired on or about May 28, 2013.

21. As a result, Vinson relocated from North Carolina to Georgia, and began her employment with FleetCor on June 17, 2013

22. On or about July 1, 2013, FleetCor engaged Sterling Infosystems ("Sterling") and InfoMart each to provide a consumer report, which included public record information purportedly regarding Vinson (collectively "Consumer Reports").

23. Prior to the procurement of the Consumer Reports, FleetCor presented Vinson with two documents purporting to be disclosures and authorizations for the procurement of the Consumer Reports.

24. Neither document was clear, conspicuous nor consisted solely of the

FCRA disclosure. Rather, both documents contained extraneous and distracting information.

25. For example, the InfoMart document contained several extraneous statements unrelated to the procurement of a consumer report, including admonitions that FleetCor may, before or after employment, verify information within the application, resume or contract for employment using any source of information, including educational or licensing institutions or Federal, State or Local criminal justice agencies directly. Moreover, the InfoMart document purports to suggest that FleetCor may obtain an *investigative consumer report*, along with notices which are mandated by 15 U.S.C. § 1681d. Investigative consumer reports are an entirely separate and distinct type of consumer report, and not akin to the type of reports actually used by FleetCor to make employment decisions.

26. Indeed, investigative consumer reports are prepared through personal interviews with third parties, and are subject to different processes than more traditional consumer reports that are generally prepared using database information.

27. The Infomart document also states that information provided by the applicant will be fired if any information provided in the application turns out to be false.

28. Even more egregious, the Infomart document contains a release of liability for the procurement of the report as well as unrelated state specific

disclosures. Simply put, FleetCor requires its applicants to release the company from liability for openly violating the FCRA.

29. The Sterling document also contains extraneous and distracting information. A job applicant is faced with five pages of small print containing multiple state specific and indecipherable disclosures. In addition, the document contains an "employer use only" section for the employer's choice of various "types" of consumer reports, including check boxes for the Terrorist Watch List, the Office of Inspector General and an ever-so-vague "Other Please List". It further adds an irrelevant and unrelated section which requires the applicant to "verify" his or her understanding that "all employment decisions are based on legitimate non-discriminatory reasons."

30. After providing the above disclosures to Vinson, FleetCor obtained her consumer report from Sterling.

31. Sterling and other consumer reporting agencies traffic in the reputations of job applicants by purchasing public records data from various sources and compiling the information into a separate database used to generate consumer reports for a fee upon request.

32. Consumer reporting agencies often make this information available to employers instantly online, and rarely provide contemporaneous notice to job applicants that adverse public record information has been shared with a prospective

employer.

33. The information provided by Sterling contained negative public record information that pertained to another individual altogether.

34. On July 8, 2013, Vinson was summoned into FleetCor's Human Resource Department where she was advised that her employment with FleetCor was terminated effective immediately because of information contained in her "criminal background check" report.

35. Vinson vehemently denied having a criminal record to FleetCor to no avail. She was verbally told that she had felony drug charges that were not disclosed at the time of application. FleetCor insisted that Vinson's information was an exact match with the person being reported on the Sterling Report.

36. At no time prior to terminating her, did FleetCor provide Vinson with a copy of the Sterling Report or a written summary of her rights under the FCRA.

## ALLEGATIONS AS TO THE COMMON QUESTIONS

37. Upon information and belief, FleetCor has purchased consumer reports from consumer reporting agencies for the last five (5) years, which are used as a basis to take adverse action against job applicants.

38. FleetCor purchases these consumer reports after hiring applicants and determining that applicants are otherwise qualified for employment.

39. Uniformly, FleetCor does not provide job applicants with a clear and

8

conspicuous disclosure consisting solely of the disclosure that a consumer report may be obtained for employment purposes as required by 15 U.S.C. § 1681b(b)(2).

40. Further, FleetCor does not provide pre-adverse action notice to job applicants, including a copy of the applicants' consumer report and a statement of the applicants' rights as required by 15 U.S.C. § 1681b(b)(3) *before* making a decision regarding their employment.

41. FleetCor's violations of the FCRA have been willful, wanton and reckless in that FleetCor knew, or reasonably should have known, that it was failing to comply with the requirements of the FCRA.

42. The specific requirements of 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3) have been the subject of numerous federal district court, circuit court and Supreme Court decisions. Moreover, these requirements have been the subject of numerous FTC staff opinions authored over the last 15 years.

43. FleetCor had an independent duty to research and review whether the forms provided by Sterling and Infomart complied with the FCRA, and wholly failed to do so.

44. Indeed, FleetCor cannot reasonably rely on a third party to ensure its own compliance with the FCRA, particularly in the face of clear and unambiguous statutory language prohibiting FleetCor's business practices.

45. Moreover, Sterling required FleetCor to contractually acknowledge that

it would provide "a clear and conspicuous disclosure…in a document that consists solely of the disclosure, that a consumer report will be obtained for employment purposes" and that FleetCor would provide a copy of the report and summary of rights before taking adverse action against a consumer.

46. Simply put, FleetCor had actual knowledge of its FCRA obligations and failed to comply accordingly.

47. Moreover, regulatory guidance provided by the FTC has explained the FCRA's requirements under both 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3).

48. Such FTC staff opinions originate in 1997, and were publically available to FleetCor.

49. Title 15 U.S.C. § 1681n(a) permits a consumer to recover statutory and punitive damages, along with attorneys' fees and costs for willful violations of the FCRA.

## CLASS ACTION ALLEGATIONS

50. Pursuant to FED. R. CIV. P. 23, Vinson brings this action on behalf of the Class initially defined below:

> All natural persons residing in the United States who applied for employment with FleetCor, and who were the subject of a consumer report obtained by FleetCor for employment purposes during the five-year period preceding the filing of this action and during its pendency.

51. Vinson also alleges the following subclasses of which she is a member:

a. All consumers to whom FleetCor did not provide a clear and conspicuous disclosure in writing that a consumer report may be obtained for employment purposes in a document that consists solely of the disclosure during the five-year period preceding the filing of this action and during its pendency;

b. All consumers for whom FleetCor denied or delayed employment based in whole or in part on a consumer report without first providing the consumer with a copy of the consumer report and written summary of the consumer's rights under the FCRA before denying or delaying employment during the five-year period preceding the filing of this action and during its pendency.

52. Upon information and belief, the putative Class and subclasses exceed 1,000 members. Information concerning the exact size of the putative class is within the exclusive possession of FleetCor.

53. The Class and subclasses members are so numerous that joinder of all members is impracticable.

54. Vinson's claims are typical of the claims of the other Class and subclasses members as all Class and subclasses members were similarly affected by FleetCor's unlawful conduct in violation of the FCRA.

55. Vinson will fairly and adequately protect the interest of the Class and subclasses members and has retained counsel competent and experienced in complex class-action litigation. Vinson is a member of the Class and subclasses and does not have any interests antagonistic to or in conflict with the members of the Class or

subclasses. Further, Vinson's claims are the same as those of the Class and subclasses, which all arise from the same operative facts and are based upon the same legal theories.

56. Common questions of law and fact exist as to all Class and subclasses members and predominate over any questions solely affecting individual Class and subclasses members, including:

> a. Whether FleetCor provided consumers with a clear and conspicuous disclosure consisting solely of the disclosure that a consumer report may be obtained for employment purposes;
>
> b. Whether FleetCor's inclusion of extraneous and distracting information including numerous state-specific disclosures, employer use only provisions, waivers of liability, and certification of non-discrimination complies with the FCRA.
>
> c. Whether consumers lawfully authorized FleetCor to procure consumer reports for employment purposes;
>
> d. Whether FleetCor provided a copy of the consumer report to the consumer *before* deciding to decline or delay the consumer's employment;
>
> e. Whether FleetCor provided a copy of a summary of the consumer's rights under the FCRA *before* deciding to decline or delay the consumer's employment; and
>
> f. Whether FleetCor recklessly violated the FCRA.

57. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Class and

subclasses is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

58. Further, the prosecution of several actions by individual members of the Class and subclasses would create a risk of varying adjudications with respect to members of the Class and subclasses, as well as create inconsistent standards of conduct for those opposing the Class and subclasses. Additionally, individual actions by members of the Class and subclasses may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

## COUNT ONE – CLASS CLAIM
## INADEQUATE DISCLOSURE AND AUTHORIZATION
## 15 U.S.C. § 1681b(b)(2)(A)

59. Vinson and the Class and subclasses members reallege and incorporate by reference all preceding allegations of law and fact.

60. FleetCor willfully violated 15 U.S.C. § 1681b(b)(2)(A) by failing to provide applicants with a clear and conspicuous written disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes. Instead, FleetCor's purported authorization forms contain extraneous and distracting information including numerous state-specific disclosures, employer use only provisions, waivers of liability, and certification of non-discrimination, none of which relate to the required FCRA disclosures.

61. As a result, FleetCor never obtained a valid authorization in writing from Vinson and the Class and subclasses members to procure a consumer report for employment purposes in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).

62. Vinson and the Class and subclasses members seek statutory damages, attorney fees and costs for these violations pursuant to 15 U.S.C. § 1681n(a)(1).

63. Vinson and the Class and subclasses members also seek punitive damages, attorney fees and costs for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

## COUNT TWO — CLASS CLAIM
## FAILURE TO PROVIDE PRE-ADVERSE ACTION NOTICE
## 15 U.S.C. § 1681b(b)(3)(A)

64. Vinson and the Class and subclasses members reallege and incorporate by reference all preceding allegations of law and fact.

65. FleetCor willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an employment decision to Vinson and the Class and subclasses members before taking adverse action that was based in whole or in part on that report.

66. FleetCor willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the summary of rights required by this section to Vinson and the Class and subclasses members before taking adverse action that was based in whole or in part on a consumer report.

67. Vinson and the Class and subclasses members seek statutory damages for these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

68. Vinson and the Class and subclasses members also seek punitive damages for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE,** Vinson and the Class and subclasses members respectfully pray for the following relief:

- A. An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned as class counsel;

- B. The creation of a common fund available to provide notice of and remedy Fleetcor's unlawful conduct;

- C. Statutory and punitive damages for all class claims;

- D. Unliquidated punitive damages; and

- E. Attorneys' fees, expenses and costs.

## JURY DEMAND

Plaintiff Chasity Shantell Vinson and the Class and subclasses members demand a trial by a jury as to all issues presented herein.

Respectfully submitted,

O'TOOLE, McLAUGHLIN, DOOLEY & PECORA, CO. L PA

/s/ Anthony R. Pecora
Matthew A. Dooley (OH 0081482)
Anthony R. Pecora (OH 0069660)
5455 Detroit Road
Sheffield Village, Ohio 44054

Telephone: (440) 930-4001
Facsimile: (440) 934-7208
Email: mdooley@omdplaw.com
apecora@omdplaw.com

SKAAR & FEAGLE, LLP
James M. Feagle (Ga. Bar No. 256916)
108 East Ponce de Leon Avenue
Suite 204
Decatur, Georgia 30030
Telephone: (404) 373-1970
Facsimile: (404) 601-1855
Email: Jfeagle@skaarandfeagle.com

SKAAR & FEAGLE, LLP
Kris Skaar (Ga. Bar No. 644961)
Justin T. Holcombe (Ga. Bar No. 55210)
P.O. Box 1478
331 Washington Avene
Marietta, Georgia 30061-1478 Telephone:
(770) 427-5600 Facsimile: (404) 601-1855
Email: krisskaar@aol.com
jholcombe@skaarandfeagle.com

*Counsel for Chasity Shantell Vinson*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CHASITY SHANTELL VINSON, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FLEETCOR TECHNOLOGIES, INC., a Delaware Corporation,<br><br>AND<br><br>FLEETCOR TECHNOLOGIES OPERATING COMPANY, LLC, a Georgia Limited Liability Company | CASE NO. 1:14-cv-01939-ELR-LTW<br><br>JUDGE ELEANOR L. ROSS<br><br>MAGISTRATE JUDGE LINDA T. WALKER |

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2015 I electronically filed the foregoing Second Amended Class Action Complaint with the Clerk of Court for the Northern District of Georgia, Atlanta Division, by using the CM/ECF system. The CM/ECF system sent notice of this filing to the following Counsel of Record:

Susan W. Furr
Betty B. Uzee
PHELPS DUNBAR, LLP
400 Convention Street, Suite 1100
P.O. Box 4412
Baton Rouge, LA 70821

James J. Swartz, Jr. (GA 694319)
Teeka K. Harrison (GA 543115)
POLSINELLI PC
1355 Peachtree Street, N.E.,
Suite 500
Atlanta, GA 30309
*Counsel for FleetCor Technologies, Inc. and*
*FleetCor Technologies Operating Company, LLC.*

/s/ Anthony R. Pecora

*Counsel for Chasity Shantell Vinson*

G:\27\27926\Complaint and Answers\Second Amended Class Action Complaint.docx